```
            IN THE UNITED STATES DISTRICT COURT
         FOR THE WESTERN DISTRICT OF NORTH CAROLINA
                      CHARLOTTE DIVISION
                       3:04CV412-2-V
                        (3:99CR190-P)
```

KENNETH O'BRIAN POWELL,         )
    Petitioner,             )
                            )
    v.                      )         **O R D E R**
                            )
UNITED STATES OF AMERICA,       )
    Respondent.             )
_____)

**THIS MATTER** is before this Court upon petitioner's "Motion to Vacate, Set Aside, or Correct" under 28 U.S.C. §2255," filed August 19, 2004; and on the "Government's Answer . . . And Motion For Summary Judgment," filed July 8, 2005. For the reasons stated herein, the government's Motion for Summary Judgment will be <u>granted</u>; and the petitioner's Motion to Vacate will be <u>denied</u> and <u>dismissed</u>.

### I.  **FACTUAL AND PROCEDURAL BACKGROUND**

Pertinent to this Motion, the record reflects that on December 6, 1999, the petitioner was named in a four-count Bill of Indictment which charged him with kidnaping, in violation of 18 U.S.C. §1201 (Count Two), with the interstate violation of a protection order, in violation of 18 U.S. C. §2266 (Counts One and Four), and with committing interstate domestic violence, in violation of 18 U.S. C. §2261A (Count Three).

On September 26, 2000, the petitioner entered into a written Plea Agreement with the government. By the terms of the parties' Agreement, the petitioner agreed to voluntarily plead guilty to the charges of kidnaping and the interstate violation of a protection order in exchange for the government's promise to dismiss the remaining charges. Further, the parties' Agreement provided that upon his conviction, the petitioner could face maximum terms of up to life imprisonment for the kidnaping offense, and five years imprisonment for the protection order violation. Also, by the terms of that Agreement, the petitioner stipulated to the existence of factual bases to support his guilty pleas and convictions.

More critically, the Plea Agreement provided that the petitioner was waiving his right to directly appeal his conviction and/or sentence on any ground. Similarly, under the Agreement, the petitioner waived his right to collaterally challenge his case, in an action like the instant one, on any grounds except ineffective assistance of counsel and/or prosecutorial misconduct.

Accordingly, on October 11, 2000, the Court conducted a Plea & Rule 11 Proceeding in this matter. On that occasion, the petitioner appeared before the Court, at which time he was engaged in a lengthy colloquy to ensure that his guilty pleas were being intelligently and voluntarily tendered.

In response to the Court's numerous questions, the peti-

tioner swore that he had reviewed a copy of the Indictment, and had taken time to discuss his case and possible defenses with his attorney; that he understood the charges and penalties which he was facing, particularly as they were explained in the Court and by his attorney; that he understood that he could plead "not guilty" and proceed to trial; that he understood that if the Probation Office determined from his criminal history that he was subject to sentencing as a Career Offender, such determination would be used to calculate his sentence; and that he understood his sentence had not yet been determined, so sentence estimates from any source were predictions and not promises of that sentence.

The petitioner further advised the Court that no one had threatened, intimidated, or forced him to enter his pleas, and no one had made him any promises of leniency or a light sentence in order to induce his pleas. On the contrary, the petitioner ultimately told the Court that he was tendering his pleas because he, in fact, was guilty of the subject offenses; and that he was satisfied with the services of his attorney. Thus, after hearing the petitioner's answers to each of its questions, the Court conditionally accepted those guilty pleas.

Thereafter, on December 14, 2000, the Court conducted a Factual Basis and Sentencing Hearing. At the outset of that Hearing, the petitioner reiterated his stipulation to the existence of factual bases for his guilty pleas and convictions.

Next, the Court entertained defense counsel's Motion for a Downward Departure, which Motion was premised upon counsel's contention that the petitioner's Criminal History Category overstated the petitioner's actual criminal history. Specifically, defense counsel conceded that the petitioner had three prior convictions for misdemeanor traffic offenses, and one for assault on a female. Defense counsel also candidly conceded that the petitioner had two convictions for felonious assault on a female; and that those two convictions subjected him to sentencing as a Career Offender.

However, counsel argued that since the time that the petitioner sustained those felony assault convictions, State law has been amended, converting all assault on a female charges into misdemeanor offenses. Therefore, defense counsel asked the Court to exercise its discretion and reduce the petitioner's Criminal History Category from Level VI on the ground that the such Level overstated the petitioner's actual criminal history. To put it another way, defense counsel argued that the true nature of the petitioner's criminal history took him out of the heartland of conduct reserved for Career Offender sentencing.

The government opposed that request, arguing instead that the petitioner's criminal history, in fact, was not overstated by his Level VI designation. For its part, the government pointed to the numerous other serious charges (for kidnap, assault on a female and sexual assault) which accompanied the petitioner's

prior felonious assault convictions, and noted that such charges had been dismissed only by virtue of the petitioner's plea bargaining efforts. The government also pointed out that the instant federal charges were related to terribly violent behavior against the petitioner's former wife, which included his stalking his victim and attempting to run her car off of the road, his breaking into her apartment and abducting her on two occasions, and his injuring her while forcing her to have sex with him. Thus, the government argued that the petitioner's current federal convictions represented a predictable "escalat[ion]" in his criminal behavior for which no departure was warranted.

Notwithstanding such argument from the government, the Court granted defense counsel's Motion for a departure, and reduced the petitioner's Criminal History Category from VI, Offense Level 34 (with a corresponding range of 262 to 327 months imprisonment), to V, Offense Level 34. Then, after announcing that the petitioner's range of imprisonment was 235 to 293 months, the Court sentenced the petitioner to a term of 240 months for the kidnaping conviction, and to a concurrent term of 60 months for the conviction for protection order violation.

The petitioner did not immediately appeal his convictions or sentences. Rather, on December 17, 2001, the petitioner filed his first Motion to Vacate arguing, <u>inter alia</u>, that trial counsel had been ineffective on the basis of counsel's alleged failure to honor his promise that he would file an appeal for the

5

petitioner. After carefully considering that Motion, by Order filed September 26, 2002, the Court granted the petitioner's Motion to Vacate, in part, for the sole purpose of allowing him to pursue a direct appeal.

Accordingly, after the Court entered an amended Judgment from which the petitioner could appeal, former trial counsel timely filed a Notice of Appeal. On appeal, newly appointed counsel challenged the petitioner's sentences, arguing that the extent of the trial Court's departure was inadequate. However, the Fourth Circuit Court of Appeals rejected the petitioner's claims, concluding that such departure determination was not subject to review because the sentences which were imposed did not exceed the statutory maximum term of life imprisonment, they did not violate the law, and they did not otherwise result from an inaccurate application of the Guidelines. See United States v. Powell, No. 02-4811, slip op. at 2 (4th Cir. May 8, 2003).

Thereafter, on August 19, 2004, the petitioner filed the instant Motion to Vacate. Here, the petitioner alleges that his sentence exceeds the statutory maximum term in violation of the recent U.S. Supreme Court decisions in Apprendi v. New Jersey, 530 U.S. 466 (2000) and its progeny; that his sentence was unlawfully enhanced, also in violation of Apprendi and the cases arising thereafter; that his guilty pleas were involuntarily tendered because they were based upon his mistaken belief that he would receive a lower sentence than the one which was imposed;

6

and that he was subjected to ineffective assistance of counsel at trial due to counsel's alleged failure to successfully argue that the petitioner's prior assault convictions did not qualify as predicate offenses for Career Offender purposes.  Despite immediately recognizing that at least three of the petitioner's claims were procedurally barred and his fourth likely did not entitle him to any relief, the Court directed the government to respond to the petitioner's Motion to Vacate.

To that end, on July 8, 2005, the government's combined Answer and Motion for Summary Judgment was filed.  By that document, the government, convincingly argues that the petitioner is not entitled to any relief on his claims.  More particularly, the government contends that the petitioner's non-counsel related claims are procedurally barred; that he is not entitled to rely on the holdings from Apprendi and the line of cases following that decision in this collateral proceeding; and that, in any case, his claims are foreclosed by the record.

On September 19, 2005, the petitioner filed a letter of Opposition to the government's Motion for Summary Judgment.  By that response/reply, the petitioner has withdrawn his two Apprendi-based claims, essentially conceding that such case could not be retroactively applied in this collateral proceeding.

In addition, however, by his response the petitioner surreptitiously seeks to reconstruct his claim of involuntary guilty pleas into a claim of ineffective assistance against counsel.

7

That is, apparently in light of the government's arguments, the petitioner now asserts that his challenge to his guilty pleas should not be barred because it is well recognized that claims against counsel should not be raised on direct appeal, but in post-conviction collateral challenges. This contention is particularly curious, however, given the fact that the petitioner does not bother to explain how he believes counsel was ineffective in connection with his claim of involuntary guilty pleas.

In any event, concerning his final claim--that counsel was ineffective for failing to convince the Court of his position--the petitioner argues that the government is attempting to mislead the Court by mis-characterizing his actual allegation. Specifically, the petitioner contends that by such claim, he is arguing that counsel was ineffective for having failed to argue that at the time of petitioner's federal sentencing, his State assault convictions no longer were felonies which could have triggered the Career Offender provisions. Therefore, the petitioner contends that had counsel raised that argument, he would have received a greater departure than was awarded.

Nevertheless, upon a close examination of the claims, and the relevant legal precedent, this Court has determined that the petitioner, in fact, is not entitled to any relief.

## II. ANALYSIS

1.  **The record conclusively establishes that the petitioner's remaining claim of sentencing error is barred by the terms of his Plea Agreement**.

By the petitioner's third claim–-that is, the first of his two remaining claims, he argues that his guilty pleas were involuntarily tendered because he received a sentence that was higher than he had expected, and which was higher than the sentence for which he bargained. However, pursuant to the petitioner's Plea Agreement, which he does <u>not</u> attack, he waived his right to challenge this type of claim in a collateral proceeding such as this one.

The Fourth Circuit has repeatedly approved the knowing and voluntary waiver of a defendant's rights to appeal and/or to collaterally challenge his conviction and sentence. <u>See, e.g.</u>, <u>United States v. General</u>, 278 F.3d 389, 399-01 (4th Cir) (finding waiver "knowing and intelligent" based upon totality of the circumstances), <u>cert. denied</u>, 536 U.S. 950 (2002); <u>United States v. Brown</u>, 232 F.3d 399 (4th Cir. 2000); <u>United States v. Marin</u>, 961 F.2d 493, 496 (4th Cir. 1992); <u>and</u> <u>United States v. Davis</u>, 954 F.2d 182, 185-86 (4th Cir. 1992).

To be effective, "the record must show that the waiver was based on a knowing and intelligent decision." <u>General</u>, 278 F.3d at 400 (internal quotation omitted), <u>quoting</u> <u>Davis</u>, 954 F.2d at 186. In determining whether a waiver of appellate rights is

9

"knowing and voluntary," and therefore effective, the Fourth Circuit applies a "totality of the circumstances" test to the facts. General, 278 F.3d at 400-01. To put it another way, whether a waiver of the right to appeal is knowing and intelligent depends on the facts and circumstances surrounding its making, including the defendant's background, experience and conduct. Davis, 954 F.2d at 186. Thus, a waiver can be effective even if the court does not question the defendant about it, so long as the other evidence in the record shows that the waiver was informed and voluntary. Id.

In the instant case, the petitioner's Plea Agreement states that by that document, he agreed to waive his right to collaterally challenge his convictions and sentences on any grounds except ineffective assistance of counsel or prosecutorial misconduct. Neither of these grounds has been formally alleged in this proceeding.

Moreover, the record reflects that during the petitioner's Plea & Rule 11 proceeding, he swore to the Court that he understood the terms of his Plea Agreement, including the provisions by which he was waiving his right to raise this type of challenge; that he understood that his sentence had not yet been determined, and he would be sentenced in conformity with the Guidelines; and that any sentencing estimate from counsel or another source was simply a prediction, rather than a promise upon which he could rely.

Equally critically on this point, the record reflects that the petitioner had had multiple exposures to the criminal justice system prior to the time that he entered into the instant Plea Agreement; that during his Plea Hearing, he did not, nor does he now, claim that he could not understand the terms of his Agreement; and that he has never claimed that he did not intend to waive certain of his collateral rights under the provisions of that Agreement. On the contrary, the petitioner seems to believe that he should be able to ignore the waiver provisions of that Agreement so that he can challenge his guilty pleas simply because he did not receive the sentence that he anticipated.

However, the law is settled that once the trial court conducts a Rule 11 colloquy, such as the one outlined above, and finds the plea(s) to have been knowingly and voluntarily entered and the terms of the parties' agreement to have been understood and accepted by the parties, absent compelling reasons to the contrary, all of those matters, including the defendant's corresponding guilt, are deemed to be conclusively established. <u>Via v. Superintendent, Powhatan Correctional Center</u>, 643 F.2d 167 (4th Cir. 1981). <u>Accord</u> <u>Blackledge v. Allison</u>, 431 U.S. 63, 73-74 (1977) (defendant's plea and statements at Rule 11 proceedings "constitute a formidable barrier" to their subsequent attack).

Moreover, the law is equally settled that a guilty plea does <u>not</u> become invalid simply because such plea was made in expectation of a significantly lower sentence. <u>United States v.</u>

11

Lambert, 994 F.2d 1088, 1093 (4th Cir. 1993); see also United States v. Lambey, 974 F.2d 1389, 1394-96 (4th Cir. 1992) (en banc) (no abuse of discretion in denial of motion to withdraw guilty plea due to imposition of 360-month sentence for defendant who relied on attorney's advice that he faced a 78-108 month sentence); and United States v. McHan, 920 F.2d 244 (4th Cir. 1990) (finding no abuse of discretion in the denial of motion to withdraw guilty plea after defendant learned his conviction might be used as predicate offense for continuing criminal enterprise charge).

Similarly, the Fourth Circuit generally has been unsympathetic toward claims that a guilty plea is invalid due to inaccurate sentencing predictions from counsel. See United States v. Foster, 68 F.3d 86-87-88 (4th Cir. 1995) (rejecting a claim against counsel by a defendant who was sentenced as Career Offender after pleading guilty upon counsel's assurances that he would not face such an enhancement); Lambey, 974 F.2d 1395 (rejecting a claim against counsel premised on defendant's representation that counsel told him he faced a 78-108-month sentence, but he received a 360-month sentence).

Based upon the foregoing,--not to mention his obvious procedural default of this claim--the Court finds that the petitioner has failed to set forth any basis upon which the Court can either invalidate the waiver provisions of the Plea Agreement or, in any event, grant the petitioner relief on this claim.

Therefore, this claim will be dismissed.

### 2. **The petitioner's final claim of ineffective assistance of counsel also must be summarily dismissed**.

Turning now to his final claim--by which the petitioner asserts that counsel was ineffective for having failed to argue that he could not be sentenced as a Career Offender--such matter can quickly be put to rest.

To be sure, with respect to allegations of ineffective assistance of counsel, a petitioner must show that counsel's performance was constitutionally deficient to the extent it fell below an objective standard of reasonableness, and that he was prejudiced thereby. Strickland v. Washington, 466 U.S. 668, 687-91 (1984). In making this determination, there is a strong presumption that counsel's conduct was within the wide range of reasonable professional assistance. Id. at 689; see also Fields v. Attorney Gen'l. of Md., 956 F.2d 1290, 1297-99 (4th Cir.), cert. denied, 474 U.S. 865 (1985); Hutchins v. Garrison, 724 F.2d 1425, 1430-31 (4th Cir. 1983), cert. denied, 464 U.S. 1065 (1984); and Marzullo v. Maryland, 561 F.2d 540 (4th Cir. 1977), cert. denied, 435 U.S. 1011 (1978).

To demonstrate prejudice, the petitioner must show a probability that the alleged errors worked to his "actual and substantial disadvantage, infecting his trial with error of constitutional dimensions." Murray v. Carrier, 477 U.S. 478, 494

13

(1986), citing United States v. Frady, 456 U.S. 152, 170 (1982). Under these circumstances, then, the petitioner "bears the burden of proving Strickland prejudice." Fields, 956 F.2d at 1297, citing Hutchins, 724 F.2d at 1430-31. Therefore, if the petitioner fails to meet this burden, a "reviewing court need not consider the performance prong." Fields, 956 F.2d at 1290, citing Strickland, 466 U.S. at 697.

In the instant case, the petitioner does not argue that the two assault on a female convictions were not felony offenses at the time that he was convicted and sentenced for those matters. Rather, the petitioner contends that because such offenses did not qualify as felonies at the time that his federal sentence was being calculated, counsel should have argued that those prior convictions could not be used as predicate offenses for Career Offender purposes. Unfortunately for the petitioner, however, in United States v. Johnson, 114 F.3d 435 (4th Cir.), cert. denied, 522 U.S. 903 (1997), the Fourth Circuit flatly rejected an identical claim.

Indeed, in Johnson, the Court stated that "the plain language [of the Guidelines] and accompanying application notes do not provide any support for [defendant's position] that the nature of the conviction at the time of sentencing, rather than at the time of conviction, controls the career offender analysis." Id. at 444 (emphasis added). Consequently, in light of Johnson, the petitioner's claim that counsel was ineffective for

14

having failed to raise this challenge is entirely foreclosed by relevant case law. Furthermore, inasmuch as counsel somehow was able to achieve limited success as a result of his having argued that the Career Offender designation overstated the seriousness of the petitioner's criminal history, the petitioner cannot possibly demonstrate either deficient performance or prejudice in connection with this claim. Therefore, the petitioner's claim against counsel also must be summarily dismissed.

### III. CONCLUSION

The record of these matters reflects that the petitioner has waived his right to raise his procedurally defaulted claim of involuntarily guilty pleas. Moreover, the petitioner also has failed to state a claim for relief on his allegation against counsel. Therefore, the government's Motion for Summary Judgment must be granted; and the petitioner's Motion to Vacate must be denied and dismissed.

### IV. ORDER

**NOW, THEREFORE, IT IS HEREBY ORDERED:**

1. That the government's Motion for Summary Judgment is **GRANTED;** and

2. That the petitioner's Motion to Vacate is **DENIED and DISMISSED.**

**SO ORDERED.**

**Signed: December 14, 2005**

Richard L. Voorhees
United States District Judge